















CAG   2/4/05   13:18
3:04-CV-00782   CELAYA RODRIGUEZ V. CITY OF CALEXICO
*56*
*O.*

05 FEB -4  AM 10: 59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA CELAYA-RODRIGUEZ,<br><br>                              Plaintiff,<br><br>     vs.<br><br>CITY OF CALEXICO, a public entity, et al.,<br><br>                              Defendants. | CASE NO. 04cv0782 DMS (RBB)<br><br>**ORDER DENYING DEFENDANT HOUSING AUTHORITY OF CALEXICO'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**<br><br>**[Doc. No. 42]** |

On November 15, 2004, Plaintiff Dora Celaya-Rodriguez ("Plaintiff") filed a Second Amended Complaint for Violation of Civil Rights against Defendants City of Calexico ("City"), Housing Authority of Calexico ("Housing Authority") and Lupita Rios ("Rios"). Plaintiff alleges three claims: (1) retaliation for her political association in violation of her First Amendment Rights pursuant to 42 U.S.C. § 1983, (2) denial of due process and equal protection in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and (4) negligent infliction of emotional distress. Plaintiff seeks damages, costs, attorneys fees and other appropriate relief.

## I.

## PROCEDURAL BACKGROUND

Plaintiff filed her original complaint in this case on April 16, 2004. After a status conference with counsel for Plaintiff and counsel for the City, Plaintiff filed a First Amended

- 1 -

1 | Complaint on July 9, 2004. In response to that Complaint, the City, the Housing Authority and
2 | Defendant Rios each filed a motion to dismiss. The Court granted in part and denied in part
3 | the motions filed by the City and the Housing Authority, and granted Defendant Rios' motion,
4 | all with leave to Plaintiff to file a Second Amended Complaint. Plaintiff filed her Second
5 | Amended Complaint on November 15, 2004, and the Housing Authority filed the present
6 | motion to dismiss. Plaintiff has filed an opposition to the motion, and the Housing Authority
7 | has filed a reply. The motion came on for hearing on January 21, 2005. Dena Acosta, Esq.
8 | appeared on behalf of Plaintiff, and Barry G. Kaiman, Esq. appeared on behalf of the Housing
9 | Authority.

10 |

## II.

## FACTUAL BACKGROUND

12 | Plaintiff began working as a Housing Manager for the Housing Authority in May 1992.
13 | (Second Am. Compl. at 4.) In 1997, Rios was the Executive Director of the Housing
14 | Authority, and she promoted Plaintiff to Housing Specialist II. (*Id.*)

15 | In mid 1999, Rios began campaigning for election to a city council seat with the City.
16 | (*Id.*) In August 1999, Plaintiff complained to certain members of the Board of Commissioners
17 | of the Housing Authority about the discovery of what she believed to be a listening device in
18 | her office. (*Id.* at 5.) As a result of that complaint, Defendant Rios disciplined Plaintiff. (*Id.*)

19 | On October 28, 1999, Plaintiff was injured on the job, and her doctor placed her off
20 | work until December 1999. (*Id.*) Plaintiff returned to work on December 16, 1999. (*Id.*)
21 | Upon Plaintiff's return, Defendant Rios stated that she had become aware of Plaintiff's
22 | performance problems. (*Id.*) Defendant Rios informed Plaintiff that she was no longer
23 | authorized to go to the Housing Department, and that her office had been taken away. (*Id.*)
24 | Defendant Rios also informed Plaintiff that she was to work in the conference room, she was
25 | to have limited use of the telephone, she was prohibited from entering any of the back offices
26 | and she was not to speak with any staff members. (*Id.* at 5-6.) Defendant Rios also informed
27 | Plaintiff that she was to provide Defendant Rios with a daily report of her activities. (*Id.* at 6.)
28 | / / /

04cv0782

1      On December 31, 1999, Plaintiff filed a written grievance with her union alleging that

2  Defendant Rios' conduct and the change in terms and conditions of her employment were

3  unlawful, and constituted harassment and discrimination. (*Id.*)

4      On January 7, 2000, Defendant Rios provided Plaintiff with two letters. (*Id.*) Both of

5  the letters were signed by Defendant Rios. (*Id.*) One denied Plaintiff's grievance, and the

6  other informed Plaintiff she was being terminated, effective January 7, 2000, for performance

7  issues. (*Id.*) Plaintiff later learned that Defendant Rios and another coworker were falsely

8  stating that Plaintiff had been terminated for incompetence, illegal misconduct and dishonesty.

9  (*Id.*)

10      On July 7, 2000, an arbitration on Plaintiff's grievance was held. (*Id.* at 7.) The

11  arbitrator issued an interim order on August 31, 2000, finding that the Housing Authority had

12  failed to provide Plaintiff the appropriate notice, due process, and a pre-termination hearing

13  prior to her discharge. (*Id.*) The final order required that Plaintiff be reinstated with back pay

14  and benefits retroactive to the date of her termination. (*Id.*)

15      On June 13, 2001, Defendant Rios provided Plaintiff with a written notice of

16  disciplinary action based on performance issues. (*Id.*) A pre-termination hearing was held on

17  July 9, 2001, but no evidence was presented to support Plaintiff's alleged performance issues.

18  (*Id.*) Three days later, Defendant Rios notified Plaintiff that she was terminated. (*Id.*) Due

19  to the stress of that decision, Plaintiff's physician placed her on disability leave. (*Id.*)

20      On August 2, 2001, the Board of Commissioners rescinded Plaintiff's termination and

21  restored her wages and benefits. (*Id.* at 8.) Plaintiff was placed on administrative leave,

22  however, pending final resolution of the union arbitration. (*Id.*)

23      Plaintiff returned to work on December 26, 2001, where she was again met with open

24  hostility. (*Id.*) At the time of her return, Defendant Rios had been terminated and replaced by

25  a political ally, Christina Rojas. (*Id.* at 8.) However, Defendant Rios continued to provide

26  services and advice to the Housing Authority at the behest of its Director of Finance until June

27  or July 2003. (*Id.*)

28  / / /

04cv0782

1    By the Spring of 2002, the hostility toward Plaintiff had escalated from verbal to

2  physical. (*Id.*) Plaintiff complained to the new Executive Director, Peter Castro, but was told

3  there was nothing he could do. (*Id.* at 9.)

4    In May 2002, Plaintiff filed additional grievances, which further escalated the

5  harassment she was being subjected to at work. (*Id.*) As a result of the harassment, Plaintiff's

6  health deteriorated, and she was again placed on disability leave. (*Id.*)

7    When Plaintiff returned to work on January 15, 2003, Christina Rojas was again acting

8  as Executive Director of the Housing Authority. (*Id.*) Plaintiff was again faced with open

9  hostility, and was placed on disability leave on January 27, 2003. (*Id.*)

10    On or about April 16, 2003, Plaintiff was terminated by the Housing Authority for a

11  third time. (*Id.* at 10.) Plaintiff again instituted grievance procedures, which are currently

12  ongoing. (*Id.* at 11.)

13                                      **III.**

14                                **DISCUSSION**

15    The Housing Authority raises several arguments in its present motion. First, it argues

16  Plaintiff's Complaint should be dismissed pursuant to the "first-to-file" rule. Second, the

17  Housing Authority urges the Court to dismiss this action pursuant to the doctrine of forum non

18  conveniens. Third, the Housing Authority asserts the Court should stay this action pending the

19  outcome of Plaintiff's state action. Finally, the Housing Authority insists the Court should stay

20  this action pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S.

21  800 (1976).[1]

22  **A.    "First-to-File" Rule**

23    The "first-to-file" rule states that "when cases involving the same parties and issues

24  have been filed in two different districts, the second district court has discretion to transfer,

25  stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-*

26

27       [1] The Housing Authority's arguments in favor of a stay rely on the existence of a pending state
court case. However, at the hearing on this motion, Plaintiff indicated she was dismissing her state
28  court case, and she has since provided the Court with evidence of that dismissal. Accordingly, the
Court denies the Housing Authority's motion to stay this action.

1    *Sinai Medical Center v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). Although it is questionable

2    whether this rule would have applied to a situation involving an action filed in state court and

3    an action filed in federal court, *see AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir.

4    2004) (stating first-to-file rule "only applies to two cases filed in separate federal courts");

5    *Radioactive J.V. v. Manson*, 153 F.Supp.2d 462, 473 (S.D.N.Y. 2001) (same), any questions

6    regarding the applicability of the rule to the facts of this case were resolved when Plaintiff

7    dismissed her state court case. Now, the only pending case is this one, and dismissal of this

8    case in favor of "a lawsuit that no longer exists is, at best, unwarranted." *Open LCR.com, Inc.*

9    *v. Rates Tech. Inc.*, 112 F.Supp.2d 1223, 1230 (D. Colo. 2000). Accordingly, the Court

10    declines to dismiss this case pursuant to the first-to-file rule.

11    **B.    Forum Non Conveniens**

12    The Housing Authority's second argument in support of its request for dismissal is

13    based on the doctrine of forum non conveniens. "The principle of forum non conveniens is

14    simply that a court may resist imposition upon its jurisdiction even when jurisdiction is

15    authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

16    507 (1947). A preliminary requirement for application of the doctrine of forum non

17    conveniens is that there be "at least two forums in which the defendant is amenable to

18    process[.]" *Id.* The parties do not dispute that requirement is met in this case. Therefore, the

19    Court must proceed to balance Plaintiff's choice of form with several private and public

20    interest factors. "The private interest factors include: the 'ease of access to sources of proof;

21    compulsory process to obtain [the] attendance of hostile witnesses, and the cost of transporting

22    friendly witnesses[.]'" *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2001) (quoting

23    *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990)). Ability

24    to enforce the judgment is another private interest factor that should be considered. *Id.* Public

25    interest factors that merit consideration include:

26       "(1) administrative difficulties flowing from court congestion; (2) imposition of
         jury duty on the people of a community that has no relation to the litigation; (3)

27       local interest in having localized controversies decided at home; (4) the interest
         in having a diversity case tried in a forum familiar with the law that governs the

28       action; [and] (5) the avoidance of unnecessary problems in conflicts of law."

1    *Id.* at 1105 (quoting *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 701, 703-04 (9th

2    Cir. 1995)).  The Supreme Court has cautioned that "unless the balance is strongly in favor of

3    the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S.

4    at 508.

5          When this motion was filed, Plaintiff had selected two forums to litigate her claims

6    against the Housing Authority and other Defendants: this Court and the Imperial County

7    Superior Court.  However, Plaintiff has since dismissed her state court action in favor of

8    proceeding with this federal case.  Her choice of forum is therefore clear; she has chosen the

9    federal court.

10         In an effort to disturb Plaintiff's choice of forum, the Housing Authority asserts the

11   private and public interest factors weigh in its favor.  Specifically, the Housing Authority states

12   the parties to this case all reside in Calexico and the evidence will all be found there.  As a

13   result, the Housing Authority argues it would be more convenient and less expensive to litigate

14   Plaintiff's claims in Imperial County Superior Court.  The Housing Authority also contends

15   the people of Imperial County have a greater interest in this litigation, therefore this case

16   should be tried in that locale.

17         These arguments, however, could just as easily serve as the basis for maintaining

18   jurisdiction in this Court.  The Housing Authority's arguments fail to recognize that the

19   Southern District of California includes not only San Diego County, but Imperial County as

20   well.  *See* 28 U.S.C. § 84(d) ("The Southern District [of California] comprises the counties of

21   Imperial and San Diego.").  Although Imperial County Superior Court may be the most

22   convenient state court for Plaintiff's claims, this Court is the most convenient federal court for

23   Plaintiff's claims.  On balance, the private and public factors do not weigh in favor of

24   disturbing Plaintiff's choice of forum.  Accordingly, this Court declines to dismiss this case

25   pursuant to the doctrine of forum non conveniens.

26   / / /

27   / / /

28   / / /

## IV.

## CONCLUSION AND ORDER

For the reasons set out above, the Court DENIES the Housing Authority's motion to dismiss Plaintiff's Second Amended Complaint, or in the alternative, motion to stay this action.

**IT IS SO ORDERED.**

DATED:  **2.4.05**                                                           
                                                                 DANA M. SABRAW
                                                                 United States District Judge

cc:    Judge Brooks
       all parties

04cv0782